OPINION OF THE COURT
Phyllis K. Saxe, J.
1664 Third Avenue, an old law tenement building located in the East 90s in Manhattan, is a five-story walk-up, built before *356 1902, containing eight railroad flat apartments each of which contain four rooms. A railroad flat or railroad-style apartment, common in buildings constructed before the turn of the twentieth century, features an entrance to the apartment from a common hallway with every room leading to the next.
Two rooms in each apartment face the street. The building also contains extremely narrow shaftways (measuring approximately nine square feet each), also common to buildings of that era, running from the second floor to the rooftop. These shaftways travel through each apartment providing a modicum of light and air to the interior rooms of the apartments.
Over time, water has entered through the tops of the shaft-ways, causing substantial damage and deterioration to the shaftway walls with leakage through shaftway windows into apartments along the route of the shaftways. The water damage to the shaftway walls has caused leakage in and around the windows.
To remedy the situation, the petitioner landlord (owner) attempted to seal the tops of the shaftways in order to prevent rain from entering. This action on the part of the owner resulted in a violation being placed on the building (July 13, 2010) for covering the south-side shaftway. This issued violation warned the owner to maintain the building in a code-compliant way, observed defective and deteriorating shaftway walls and ordered the owner to maintain the shaftway according to code. Another issued violation (July 20, 2011) noted that deteriorating conditions including wall delamination on four air shafts and ordered the owner to “maintain building in a legal manner.”
The owner, apparently concerned about the deteriorating condition of the shaftway walls and the consequent leakage of water through windows along the shaftway walls, produced a plan of remediation (plan) which was filed with the New York City Department of Buildings (May 13, 2011). The plan, approved by the New York City Department of Buildings on June 5, 2012, was designed to provide a scope of work necessary to remedy the situation. It included the removal of all windows along the shaftway and the sealing off of the air shafts with fire resistant material. The planned scheme of repairs for the air shafts would make, it was claimed, the building compliant with the New York City Building Code and allow the owner to obtain a certificate of occupancy.
I turn first to the instant holdover proceeding concerning apartment No. 3S in which the respondent tenant Jillian *357 Murray is alleged to have denied access to her apartment. Accordingly, the owner has been unable to accomplish the work envisioned in the plan approved by the Department of Buildings. The denial of access by the tenant was conceded at trial.
Apparently, Leyin Ouyang, formerly the sole principal of the named petitioner LLC is the current owner of the subject premises although at the time when this summary proceeding was commenced, she was not. She requests, over tenant’s objection, substitution under CPLR 1018 and for the amendment of the caption to reflect such substitution; since no prejudice has been demonstrated by Murray, the substitution is granted and the caption is amended accordingly.
It is the tenant’s position that the instant proceeding should be dismissed and judgment awarded in her favor for a number of reasons which will be discussed seriatim.
First, the tenant argues that since the sealing of the air shafts would eliminate all light and air in the middle rooms of her apartment, it would violate Multiple Dwelling Law § 213 (1) and section 27-2057 of the Housing Maintenance Code (Administrative Code of City of NY) which provide that light or ventilation shall not be diminished in any way not approved by the Department.
Second, it is the tenant’s position that the instant proceeding should be dismissed and judgment awarded in her favor because the owner here should be collaterally estopped based upon a decision and order of my colleague Judge Jack Stoller in Ouyang v Cromelin (45 Misc 3d 1201 [A], 2014 NY Slip Op 51416[U] [Civ Ct, NY County 2014]).
In that case involving the same owner, the same Building Department plans, a different tenant, but involving the landlord’s right to remediate the shaftway problem in accordance with the plans, as here, Judge Stoller, in a detailed analysis of the applicable facts and law held that the owner had not met her burden of proving that the work sought to be done was either necessary or required by law. He therefore dismissed the proceeding.
I am requested by the tenant to apply the doctrine of collateral estoppel based upon Judge Stoller’s decision. I respectfully decline this request.
Collateral estoppel in New York applies only when the same issue has already been determined in a prior action which is decisive of the present action (Schwartz v Public Adm’r of *358 County of Bronx, 24 NY2d 65, 71 [1969]). The instant matter involving Ms. Murray is the prior action; the Cromelin trial did not start until after testimony was completed in this case. The fact that Judge Stoller’s decision preceded this court’s decision is not, under relevant case law, sufficient to apply the bar of collateral estoppel. Equally important is the fact that collateral estoppel is an equitable doctrine and, as such, we should examine the fairness of preclusion and whether the application of the doctrine would conserve court resources. Here, there would be no conservation of court resources as the full trial has already been held in this case and the parties merely await a decision. Accordingly, collateral estoppel is inapplicable.
The more important reason for not following the holding in the Cromelin matter is that I believe it is inapplicable to the instant matter.
In this case, the Department of Buildings accepted and approved a plan calling for the remediation of deteriorating shaftways and for the sealing of windows facing onto the shaft-ways. Upon the acceptance of the plan, a permit for the necessary work was issued to the owner. If there was objection to the acceptance of the plan and the issuance of a permit, an administrative appeal challenging the plan and permit should have been timely taken to the New York City Board of Standards and Appeals (NY City Charter § 666 [6] [a]). It was not. Courts will generally not review objections to agency determinations that have not been pursued through administrative channels (Capers v Giuliani, 253 AD2d 630 [1st Dept 1998], Iv denied 93 NY2d 868 [1999]). Of course, once all administrative appeals have been exhausted and the agency has made a final determination, the aggrieved party has the option to make a further challenge via a CPLR article 78 proceeding, which also did not occur here (Matter of Greenberg v Assessor of Town of Scarsdale, 121 AD3d 986 [2d Dept 2014]).
The court in the Cromelin proceeding substituted its own judgment in place of that favored by the Department of Buildings in its acceptance and approval of plans and the issuance of a permit based upon these plans. By doing so, the court permitted the tenant to collaterally attack the agency’s determination and sidestep the appropriate procedural mechanism for challenging decisions from an administrative agency.
It is clear that the Housing Maintenance Code (§ 27-2009 [3]) gives the owner a right of access to enter Murray’s apart *359 ment in order to perform and complete the work approved and unchallenged by the Department of Buildings for the purpose of rectifying the outstanding violations. The tenant’s lease (para 15) likewise provides the owner with a right of access under these circumstances. Accordingly, it is clear that the tenant’s failure to provide the owner with reasonable access to do the work authorized is a substantial breach of the tenant’s obligation under the lease.
The tenant makes much of the fact that the Department of Buildings has placed the plan in audit status and accordingly requests a stay pending a determination by the Department of Buildings with regard to objections listed in the notice of audit objections dated February 24, 2014. The application for a stay is denied. The plan was approved by the Department of Buildings on June 5, 2012, nearly 2V2 years ago, and while the plan has once again been placed in audit status, it remains approved. This is especially the case, where, as here, the owner has spent considerable money to close the air shafts in question in reliance on the issued permit (apparently more than $100,000) (see Matter of Woods v Srinivasan, 108 AD3d 412 [1st Dept 2013], Iv denied 22 NY3d 859 [2014]).
Finally, we come to the necessity of harmonizing the authority of the Department of Buildings to accept building work plans for construction work, as here, and a provision of the Multiple Dwelling Law (§ 213 [1]) and of the Housing Maintenance Code (§ 27-2057) providing for continuation of all light and air in a tenant’s apartment.
At first, it bears pointing out that under circumstances such as these, the tenant has no easement for light and air (Levin v 117 Ltd. Partnership, 291 AD2d 304 [1st Dept 2002]). The court there however noted that the failure to find such an easement would not have any adverse effect on the plaintiff’s claim that the sealing of the air shaft in question would constitute a diminution of building service {id.).
Pursuant to the Rent Stabilization Law (RSL) (Administrative Code of City of NY) and its implementing regulations set forth in the Rent Stabilization Code (RSC) (9 NYCRR) an owner of a rent-stabilized building must maintain and continue all services provided to tenants of the building (RSL § 26-514; RSC §§ 2522.4 [d], [e]; 2523.4 [a]; Matter of 98 Riverside Dr., LLC v New York State Div. of Hous. & Community Renewal, 2013 NY Slip Op 33426[U] [Sup Ct, NY County, Dec. 2, 2013]). Failure to supply or maintain those services may result in rent *360 reduction upon application to the New York Division of Housing and Community Renewal (DHCR) (see Matter of Melohn v New York State Div. of Hous. & Community Renewal, 234 AD2d 23 [1st Dept 1996]).
Accordingly, upon the completion of the work permitted under the approved plan, including inter alia, the sealing of the interior windows off the shaftway, the tenant may apply for a rent reduction to DHCR.
Finally, on the facts and the law, I therefore find as follows:
1. the petitioner is entitled to a final judgment of possession based upon the respondent’s failure to provide access for the purpose of permitting petitioner to make necessary repairs and alterations, constituting a breach of a substantial obligation of the lease; and
2. upon entry of a final judgment, the respondent shall be entitled to the benefit of all applicable statutory cure periods so as to enable and facilitate the petitioner’s ability to carry out the intended work. At any time, prior to entry of the final judgment or during the statutory cure period, if the respondent offers the owner, in writing, a right of access to perform the subject repairs and alterations, any postjudgment eviction activity will be stayed; and
3. the respondent’s motion for dismissal on the grounds of collateral estoppel impossibility, and for attorney’s fees, is denied; and
4. the respondent’s motion for a stay is denied; and
5. the petitioner’s application made by way of order to show cause for access, is subsumed in the decision herein and is granted to the extent set forth; and
6. petitioner, as the prevailing party, is entitled to legal fees and shall submit a detailed affirmation of service to the court, upon notice to the respondent.